UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JERMAINE NADAL,                         :
                                         :
         Plaintiff,                      :      Civ. No. 13-5447 (RBK)
                                         :
    v.                                   :      **OPINION**
                                         :
CHRIS CHRISTIE, et al.,                  :
                                         :
         Defendants.                     :
                                         :

**ROBERT B. KUGLER, U.S.D.J.**

### I.    INTRODUCTION

Plaintiff is a state prisoner currently incarcerated at the South Woods State Prison in Bridgeton, New Jersey. He is proceeding *pro se* in this action. Plaintiff initially filed this action in the Superior Court for the State of New Jersey, Cumberland County. Defendant Jeffrey S. Chiesa subsequently removed this action from the Superior Court to this Court on September 13, 2013. On October 3, 2013, plaintiff filed his opposition to the notice of removal. That request will be denied. Thereafter, defendants Christie and Chiesa filed a motion for an extension of time to file an answer. Good cause appearing, that motion will be granted.

Several defendants have also filed motions to dismiss. However, before the Court analyzes those motions to dismiss, the complaint must be screened to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit pursuant to 28 U.S.C. § 1915A. For the reasons set forth below, the complaint will be permitted to proceed in part.

## II. BACKGROUND

For purposes of this screening, the allegations of the complaint will be construed as true. Plaintiff names as defendants the following: (1) Chris Christie – Governor of the State of New Jersey; (2) Gary M. Lanigan – Commissioner of the New Jersey Department of Corrections; (3) Jeffrey S. Chisea – Attorney General of New Jersey; (4) James T. Plousis – Chairman of the New Jersey State Parole Board; (5) Classification Department of the New Jersey Department of Corrections; (6) Meg Yatauro – Administrator of the Adult Diagnostic Treatment Center ("ADTC"); (7) UMDNJ; (8) Dr. Nancy Graffin – Head of Treatment Services at Avenal; (9) Ms. Finley – Southern State Licensed Clinical Social Work; (10) Ms. Wesley – Southwoods Licensed Clinical Social Worker; (11) Administrator – Southern State Correctional Facility; (12) Administrator – Southwoods State Prison; and (13) Jane & John Does.

The thrust of plaintiff's complaint centers on his transfer out of the Adult Diagnostic Treatment Center ("ADTC"). Plaintiff was initially transferred to the Southern State Correctional Facility on or about August 7, 2012. Subsequently, upon his request, plaintiff was transferred to the South Woods State Prison approximately six months later, where he is currently incarcerated.

Plaintiff received sex offender treatment while incarcerated at ADTC due to the fact that he is a sex offender who was diagnosed as being repetitive and compulsive.[1] Plaintiff states that

---

[1] One of the relevant statutes that plaintiff relies on for his claim that he is entitled to continued treatment is as follows:

> If the court finds that the offender's conduct was characterized by a pattern of repetitive, compulsive behavior and that the offender is amendable to sex offender treatment and is willing to participate in such treatment, the court shall, upon the recommendation of the Department of Corrections, sentence the offender to a term of incarceration to be served in the custody of the commissioner at

this program was mandatory and provided him with many ways to recognize his high risk areas. The specialized treatment included groups where other sex offenders met and openly discussed the distortions of their mental thinking under the close supervision of therapists.

Plaintiff states it was his own choice to live in ADTC's "Therapeutic Community." Plaintiff describes this as "a highly intensive program that offers a maximum amount of participation to be able to fully delve into crime dynamics and sex offending mentalities." (Dkt. No. 1 at p. 73-74.)

Plaintiff alleges that on August 7, 2012, the Commissioner of the Department of Corrections, defendant Gary M. Lanigan, ordered his transfer out of his "constitutional, legislature mandated, court ordered ADTC treatment." (Dkt. No. 1 at p. 68.) He claims that his specialized treatment can only be learned and maintained while being housed at ADTC, and is not provided to him at his other places of incarceration.

He claims that as a result of being transferred, he has had to get rid of his sex offender treatment materials. He feared that he would be assaulted if these materials were discovered while he is incarcerated outside of ADTC. He fears for his well-being if other inmates discover he is a sex offender.

He also details the circumstances of his transfer from ADTC and what his emotional state has been since the transfer.[2] More specifically, he claims that an unnamed officer told the already waiting inmates in the transport van that they had to sit in the back because plaintiff

---

the Adult Diagnostic and Treatment Center for sex offender treatment as provided in subsection h. of this section[.]

N.J. STAT. ANN. § 2C:47-3(b).

[2] The details and circumstances of plaintiff's transfer and subsequent incarceration at Southern State and South Woods Correctional Facilities are gleaned from plaintiff's certification which is attached to his complaint. The Court will construe petitioner's certification as part and parcel of his complaint.

needed to sit alone.  (*See* Dkt. No. 1 at p. 119.)  When plaintiff asked the officer why this was being done, the officer responded that plaintiff should "blame the courts for wanting all Avenel inmates kept separated from regular inmates." (*Id.*)  Upon hearing this, the other inmates in the van then taunted plaintiff by calling him a "baby raper" and "tree jumper" and telling him they hoped he gets killed in prison. (*Id.*)  The unnamed officer told the other inmates to cut it out, but plaintiff continued to feel fear and the inmates continued to harass plaintiff during the transport.

Plaintiff later arrived at Southern State Correctional Facility.  Upon arrival there, he was met by another unnamed officer who told the driver of the van, "You fucking guys keep on bringing me all the scum bags." (Dkt. No. 1 at p. 120.)  This officer then talked to plaintiff stating, "What happened, you're cured from raping all the little babies." (*Id.*)  This was said in front of the officers who transported plaintiff to Southern State Correctional Facility along with another inmate that was entering the facility with plaintiff.

On plaintiff's first night at Southern State Correctional Facility, an inmate named "Huck" complained to a female officer that none of the inmates wanted "this pedophile here." (Dkt. No. 1 at p. 122.)  Plaintiff claims that he was so terrified he stayed awake that entire night.  Plaintiff states that he never felt safe at Southern State Correctional Facility and was diagnosed with an anxiety disorder.

Plaintiff eventually met with Finley, a therapist at the Southern State Correctional Facility.  She told him that he was removed from ADTC because he was no longer under the Sex Offender Act.  Plaintiff disagreed with Finley and told her that he has to continue with his specialized sex offender treatment.  Finley told plaintiff that he would have to move on from that kind of treatment as it was not offered at Southern State.  Plaintiff states that he went back and forth with Finley on this issue for six months.

After six months at Southern State, plaintiff asked for a transfer after being threatened by inmates, being singled out by officers and experiencing anxiety and fear. Plaintiff was then transferred to South Woods State Prison. However, plaintiff states that his sex offender status was exposed there by SCO Franchetta. Specifically, plaintiff alleges that Franchetta is the housing officer who delivered plaintiff's inmate trust account statement to his cell when he was not present. Plaintiff states that this caused him fear as it allowed his cellmate to review his information on his trust account, which included information regarding the various fines for plaintiff's sex offenses. Plaintiff requested to be seen for sex offender treatment at South Woods but was denied because that kind of treatment was not offered at South Woods. Upon asking his therapist at South Woods, Wesley, about his sex offender treatment, she told him that that type of treatment was only offered at ADTC.

Plaintiff demands to be provided counseling for New Jersey's sexual offenders under the Sexual Offenders Act. He also seeks nominal, compensatory and punitive monetary damages.

### III.    MOTION TO REMAND

This case was removed from the Superior Court for the State of New Jersey, Cumberland County. The defendants who have appeared in this case argue that this Court has jurisdiction as plaintiff has raised constitutional claims pursuant to 42 U.S.C. § 1983. Plaintiff has opposed the removal of his case. He argues that this Court does not have subject matter jurisdiction over his complaint. More specifically, he claims that "he never alluded to any of the Federal Statutes nor Civil Rights violations contrary to defendant(s) allegations[.]" (DKt. No. 6 at p. 22.) A review of plaintiff's complaint establishes that he is mistaken and that his complaint includes federal claims.

Defendants bear the burden of showing that there is federal subject matter jurisdiction in an action removed to federal court under 28 U.S.C. § 1441. *See Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). This Court can only exercise limited jurisdiction, or possesses "only that power authorized by Constitute and Statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Section 1441 "is to be strictly construed against removal[.]" *Samuel Bassett*, 357 F.3d at 396 (citing *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)).

In this case, plaintiff's assertions to the contrary notwithstanding, the complaint raises causes of action asserting that the civil rights owed to him under the United States Constitution were violated. These allegations give this Court subject matter jurisdiction over the complaint pursuant to 28 U.S.C. § 1331.[3]

By way of example only, plaintiff separately labels each of his claims. He labels Claim XIV as follows: "The public have a sufficient interest in seeing that its jurisprudence system, penal system, continue to minister humane fundamental treatment, justice, as due process/equal protection, with confidence, integrity, that the state and *federal constitutions* affords such guaranteed protections to plaintiff." (Dkt. No. 1 at p. 98 (emphasis added).) Furthermore, in Claim Sixteen, plaintiff states that he is making "retaliation claims against Defendants because their past history has demonstrated such from filing litigation, and of course, such illegal conduct is against the law and, direct fundamental violation of Plaintiff's U.S. Const. 8th Amend. as U.S. Const. 14th Amend, guaranteed protected rights." (*See* Dkt. No. 1 at p. 104.) Later on within Claim Sixteen, plaintiff claims that, "[f]undamental fairness dictate that if defendants stoop to their old common practice of retaliations, they indeed must be held liable and accountable for

---

[3] Section 1331 states that, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

them, bluntly violating plaintiff at bar U.S. Const. 8th and U.S. Const. Amend protective rights, that's echoed as well in U.S. Const. Art. IX." (Dkt. No. 1 at p. 105.) This Court construes these allegations as plaintiff's attempt to raise a retaliation claim under the First Amendment. Thus, it is clear that plaintiff's complaint raises federal constitutional claims, thereby giving this Court federal question jurisdiction under § 1331. Accordingly, plaintiff's request for remand will be denied.

### IV.   SCREENING

A.   Standard for *Sua Sponte* Dismissal

District courts must review complaints in civil actions in which a prisoner seeks redress against a governmental employee or entity. *See* 28 U.S.C. § 1915A(b). Section 1915A(b) directs district courts to dismiss *sua sponte* any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

Under *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim,[4] the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[4] "[T]he legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915A is identical to the legal standard employed in ruling on 12(b)(6) motions." *See Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

B. <u>Section 1983 Actions</u>

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

C. <u>Discussion</u>

    i. *Classification Department of the New Jersey Department of Corrections*

Plaintiff names as one of the defendants in this case the Classification Department of the New Jersey Department of Corrections. However, the New Jersey Department of Corrections is not a person for purposes of § 1983 liability. *See Tulli-Makowski v. Community Educ. Ctrs., Inc.*, No. 12-6091, 2013 WL 1987219, at *3 (D.N.J. May 13, 2013) (citing *Grabow v. Southern*


*State Corr. Facility*, 726 F. Supp. 537, 538-39 (D.N.J. 1989)). Accordingly, plaintiff's federal claims against this defendant will be dismissed with prejudice for failure to state a claim.

> ii. *Chris Christie, Jeffrey S. Chiesa, James T. Plousis, Meg Yatauro & Administrators of the Southern State and South Woods Correctional Facilities*

Plaintiff bases his claims against defendants Chris Christie, Jeffrey S. Chiesa, James T. Plousis, Meg Yatauro & Administrators of the Southern State and South Woods Correctional Facilities on a theory of *respondeat superior* liability. He also raises similar allegations against all of these defendants; specifically, plaintiff alleges that these defendants are:

> directly responsible to maintain a policy, practice, or such customs which directly did/ does caused/causes [the] constitutional harm, and if they participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.

(Dkt. No. 1 at p. 43, 45, 47, 51, 63, 64-65.) Additionally, plaintiff alleges that these defendants did not order

> defendant(s) under his [her] command to cease and desist their illegal conduct. The Governor [Attorney General, Parole Chairman, Administrator] has direct knowledge of such violations and knowingly, as intelligently allow such deliberate indifference neglect ot fest on until the filing of said complaint at bar.
>
> [Defendants Christie, Chiesa, Plousis, Yataruo and Administrators] set forth policies, rules and regulations procedures that are supposed to protect plaintiff's State and Federal Constitutional Rights, Civil Liberties Rights and Common-Law Rights. Where the expressed intentions of the Legislature would not negligently demonstrate indifference upon and against plaintiff constitutional liberties.

(*Id.* at p. 43, 45-46, 47-48, 51, 63, 65.)

Section 1983 does not support a claim based on *respondeat superior*. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). A plaintiff must allege that a supervisor had a personal involvement in the alleged

9

wrongs. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also In re Bayside Prison Litig.*, Civ. No. 97-5127, 2007 WL 327519, at *5 (D.N.J. Jan. 30, 2007). Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. *See Rode*, 845 F.2d at 1207; *see also Baker v. Monroe Tp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995); *Jackson v. Camden Cnty. Corr. Facility*, Civ. No. 12-7538, 2013 WL 1844636, at *3 n.1 (D.N.J. Apr. 29, 2013).

In this case, plaintiff does not allege specific facts showing the personal involvement of how Christie, Chiesa, Plousis, Yatauro or the unnamed Administrators were involved in this case. As previously stated, the crux of plaintiff's complaint is that he was improperly transferred away from ADTC which caused his specialized treatment for being a sex offender to cease. However, the complaint is devoid of specific factual allegations detailing how these defendants were involved or even knew about the transfer. Indeed, plaintiff only alleges that it was defendant Lanigan who ordered the transfer.

Accordingly, to sufficiently state a § 1983 claim against these defendants, plaintiff must state that there was a relevant policy or custom by these defendants that caused the constitutional violations he alleges. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 530 U.S. 397, 404 (1997)). "A policy is made 'when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict.'" *See id.* (quoting *Kniepp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (plurality opinion))). "A custom is an act 'that has not been formally approved by an appropriate decisionmaker,' but is so widespread as to have the force of law.'" *Id.* (citing *Bryan Cnty.*, 520 U.S. at 404). To adequately plead a "custom," a

10

plaintiff must plead facts from which it can be inferred that the decisionmaker knew or acquiesced to the practices.  *See McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009); *Forero v. Atlantic City*, No. 11-1630, 2014 WL 1301535, at *2 (D.N.J. Mar. 31, 2014) (citation omitted).

The complaint does not allege sufficient factual matter to show that the § 1983 claims against these defendants are facially plausible.  Plaintiff states in conclusory fashion that these defendants "had direct knowledge" of the constitutional violations, yet he fails to allege with sufficient factual matter that this is the case such as alleging that they had knowledge of his transfer.

Furthermore, while the complaint mentions a policy, it does not state that any of these defendants issued any type of final proclamation or edict with respect to plaintiff's transfer.  Similarly, while the complaint mentions custom as to these defendants, the complaint is devoid of any facts to support such a claim.  Indeed, the complaint appears to be centered on plaintiff's individual and unique circumstances, not some overriding policy or custom put in place by these defendants.  The complaint does not allege any facts to permit the court to infer that there is a custom in place that is so widespread as to have the force in law.  Thus, plaintiff's § 1983 claims against these defendants amount to nothing more than a mere recital of the elements of a § 1983 claim.  This is insufficient to state a claim under *Iqbal*.  *See* 556 U.S. at 678.  Accordingly, plaintiff's federal § 1983 claims against these defendants will be dismissed without prejudice for failure to state a claim upon which relief can be granted.

   iii. *UMDNJ, Nancy Graffin, Ms. Finley, Ms. Wesley & Frachetta*

    a. Claims Related to Transfer

Similar to the discussion above, plaintiff fails to allege that defendants UMDNJ, Graffin, Finley and Wesley were personally involved in the transfer of plaintiff out of ADTC where he was receiving specialized sex offender treatment, or that they had the power to institute or prevent such a transfer. Thus, he fails to properly allege a § 1983 claim against these defendants. *See Rode*, 845 F.2d at 1207 (stating need for personal involvement).

Similarly, while the complaint mentions policy with respect to these defendants, it does not state that any of these defendants issued any type of final proclamation or edict. *See Natale*, 318 F.3d at 584. Additionally, while the complaint mentions custom as to these defendants, it is devoid of any facts to support such a claim. Indeed, it does not allege any facts to permit the court to infer that there is a custom in place that is so widespread as to have the force in law. *See id.* As previously stated, the complaint is centered on plaintiff's unique circumstances, not some policy or custom that is in place.

It is worth noting that plaintiff alleges that these four defendants should have informed the Commissioner of the Department of Corrections and/or the Administrators of their respective prisons that plaintiff was receiving no counseling at his new facilities and that he was at a high risk of recidivism for sexual offenses. In effect, plaintiff is appearing to claim that these defendants should have told their superiors about the statutory scheme which initially provided plaintiff with his specialized treatment. However, plaintiff admits in the complaint that defendant Lanigan, who effectuated the transfer according to the complaint, had direct knowledge of the violations at play in this case. Thus, it is unclear to the Court what type of claim plaintiff is attempting to assert with respect to these additional allegations. Clearly

however, such allegations are insufficient to state with facial plausibility that plaintiff has stated a § 1983 claim against these defendants.

> b.   Claim Related to Fear of Physical Harm

With respect to Wesley and Finley, plaintiff may also be attempting to allege a failure to protect claim. Indeed, plaintiff states that he fears physical harm from other inmates if they find out he is a sex offender previously incarcerated at ADTC. The complaint indicates that plaintiff made these fears known to Wesley and Finley.

To state a claim for failure to protect from inmate violence, a plaintiff must allege that: (1) he was incarcerated under conditions posing a substantial risk of harm; (2) the official was deliberately indifferent to that substantial risk of harm; and (3) the official's deliberate indifference caused the harm. *See Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997)). With respect to showing deliberate indifference, the Third Circuit has stated that:

> "Deliberate indifference in this context is a subjective standard: "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." *Beers-Capitol* [*v. Whetzel*], 256 F.3d 120, 125 [(3d Cir. 2001)]. It is not sufficient that the official should have known of the risk. *Id.* at 133. A plaintiff can, however, prove an official's actual knowledge of a substantial risk to his safety "in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842. In other words, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

*Id*.

In this case, plaintiff has not alleged that Finley or Wesley acted with deliberate indifference to his substantial risk of harm. Indeed, he admits in the complaint that Wesley cautioned plaintiff about having this information discovered while he is incarcerated. Thus, he fails to state a failure to protect claim. Accordingly, plaintiff's federal § 1983 claims against the

13

UMDNJ, Graffin, Finley and Wesley will be dismissed without prejudice for failure to state a claim upon which relief can be granted.

It is also worth noting that plaintiff may also be attempting to raise a failure to protect claim against officer Frachetta for placing his inmate trust account statement in his cell while he was not there. Plaintiff became fearful that this allowed his cellmate to view his inmate trust account statement which included information that plaintiff was a sex offender. However, the mere placement of his trust account statement by Frachetta in plaintiff's cell does not amount to an allegation showing that he was deliberately indifferent to a substantial risk of harm. The mere placement of plaintiff's trust account in his cell did not necessarily expose plaintiff's sex offender status to other prisoners. Indeed, the complaint does not allege that Frachetta actually knew that this placement of his trust account statement in his cell would place plaintiff in substantial risk of harm. Instead, construed liberally, the complaint appears to imply that Frachetta should have known that placing his trust account in his cell when he was not there may have created a substantial risk of harm to plaintiff. Such allegations though are insufficient to state deliberate indifference. *See Bistrian*, 696 F.3d at 367. Accordingly, to the extent that plaintiff is also attempting to assert a § 1983 claim against Frachetta, it will be dismissed without prejudice for failure to state a claim upon which relief can be granted.

> c. State law claims against defendants Christie, Chiesa, Plousis, Classification Department of New Jersey Department of Corrections, Yatauro, UMDNJ, Graffin, Finley, Wesley, Administrators Southern State and South Woods State Prisons & Frachetta

Because there are no federal claims remaining against defendants Christie, Chiesa, Plousis, Classification Department of New Jersey Department of Corrections, Yatauro, UMDNJ, Graffin, Finley, Wesley, Administrators Southern State and South Woods State Prisons and Frachetta, the Court will decline to exercise supplemental jurisdiction over plaintiff's state law

14

claims against these defendants.  *See T.R. v. Cnty. of Delaware*, No. 13-2931, 2013 WL 6210477, at *8 (E.D. Pa. Nov. 26, 2013) (declining supplemental jurisdiction over state law claims over one defendant where there are no viable federal claims against that defendant, despite the fact that plaintiff pled plausible claims against another defendant) (citations omitted); *Culver v. Specter*, No. 11-2205, 2013 WL 5488649, at *4 n.2 (M.D. Pa. Sept. 30, 2013) (same).

      iv.     *Unnamed John Doe Defendants*

In the complaint, plaintiff initially makes the same conclusory allegations with respect to the John Does as he did against defendants Christie, Chiesa, Plousis, Yartauro and the Administrators of the Southern State and South Woods Correctional Facilities.  As previously described, these conclusory allegations fail to state a § 1983 claim upon which relief can be granted.

Nevertheless, plaintiff may also be attempting to raise a failure to protect claim against two unnamed officers who were involved in plaintiff's transport from ADTC to Southern State Correctional Facility.  As previously noted, one of the transport officers told the other inmates in the transport van that plaintiff had to sit by himself because he was coming from Avenal.  Upon arrival at Southern State Correctional Facility, a different officer asked plaintiff within earshot of another inmate whether he was cured of raping little babies.  Thus, it appears as if plaintiff is attempting to raise a failure to protect claim against these two unnamed John Doe officers because they made inmates around plaintiff aware that he was a sex offender.

At the outset, the Court notes that allegations of threats or verbal harassment without more do not state a claim under § 1983.  *See Brown v. Hamilton Twp. Police Dep't Mercer Cnty., N.J.*, 547 F. App'x 96, 97 (3d Cir. 2013) (per curiam) ([A]llegations of verbal abuse or threats, absent any injury or damage, are not cognizable under §1983.") (citing *McBride v. Deer*,

15

240 F.3d 1287, 1291 n.3 (10th Cir. 2001); *Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997)); *Barber v. Jones*, No. 12-2578, 2013 WL 211251, at *5 (D.N.J. Jan. 18, 2013) (noting that general allegations of verbal abuse unaccompanied by injury or damage are not cognizable under § 1983).  Nevertheless, to reiterate, in stating a failure to protect claim, a plaintiff must allege (1) he was incarcerated under conditions posing a substantial risk of harm; (2) the official was deliberately indifferent to that substantial risk of harm; and (3) the official's deliberate indifference caused the harm.  *See Bistrian*, 696 F.3d at 367 (citations omitted).  Courts have stated that labeling a prisoner a child molester in front of other inmates can lead to a substantial risk of serious harm to the prisoner.  *See Joseph v. Asure*, No. 11-1255, 2012 WL 406210, at *2 (M.D. Pa. Jan. 12, 2012) (citing *Renchenski v. Williams*, 622 F.3d 315, 326 (3d Cir. 2010); *Brown v. Narvais*, 265 F. App'x 734 (10th Cir. 2008)), *report and recommendation adopted by* 2012 WL 406204 (M.D. Pa. Feb. 8, 2012); *see also Horan v. Wetzel*, No. 13-140, 2014 WL 631520, at *14 (M.D. Pa. Feb. 18, 2014).  Additionally, the fact that the dissemination of this information by these two unnamed John Doe officers did not lead to an attack on plaintiff may not necessarily defeat this claim.  *See Brown*, 265 F. App'x at 736.  However, the Court notes that plaintiff's lack of physical injury may ultimately affect his ability to recover compensatory damages on this claim.  Indeed, under 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  However, § 1997e(e)'s bar does not apply to nominal or punitive damages.  *See Mitchell v. Horn*, 318 F.3d 523, 533-34 (3d Cir. 2003).  In this case, in addition to seeking compensatory damages, plaintiff also seeks nominal and punitive damages.  Accordingly, at this early screening stage, the Court will permit plaintiff's failure to protect claim against these two John Doe defendants to

proceed.  If/when plaintiff discovers the names of these two individuals, he can seek to amend his complaint to add their names so that the complaint could then be served on these individuals as this Court cannot serve the complaint as is on John Does.

      v.      *Gary M. Lanigan*

Plaintiff expressly states in the complaint that defendant Lanigan ordered his transfer out of ADTC, thereby depriving him of what he alleges is his constitutionally protected right to receive sex offender treatment.  Thus, unlike the other defendants in this case, plaintiff has specifically stated that Lanigan is personally involved as he was the individual who ordered the transfer.  In light of this alleged personal involvement of Lanigan as alleged in the complaint, and the early stages of this case, the Court will permit the complaint to proceed against defendant Lanigan.

## V.    MOTIONS TO DISMISS

Defendants UMDNJ, Finely, Graffin and Wesley filed a motion to dismiss.  (*See* Dkt. No. 16.)  Additionally, defendants Christie and Chiesa also filed a motion to dismiss.  (*See* Dkt. No. 29.)  However, as the claims against them have not made it past screening, these motions will be denied as unnecessary.

## VI.    MOTION TO AMEND COMPLAINT

On May 12, 2014, plaintiff filed a motion to amend the complaint.  (*See* Dkt. No. 45.)  The motion does not include a copy of plaintiff's proposed amended complaint.  Instead, it seeks to supplement to plaintiff's original complaint.  As the motion to amend does not include a proposed amended complaint, it will be denied without prejudice.  This will be so ordered because as one leading treatise has said:

> [O]nce the original pleading is amended it no longer is part of the
> action and an incorporation of some of its allegations may be

> confusing unless carefully set forth.  Thus, to ensure that the pleadings give notice of all the issues that are in the controversy so they can be handled and comprehended expeditiously, the safer practice is to introduce an amended pleading that is complete in itself, rather than one that refers to the prior pleading or seeks to incorporate a portion of it. . . . Even if the pleading is lengthy and involved, a self-contained amended pleading will assist the parties and the court in dealing with the issues better than one that is replete with references to another pleading.

6 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1476 (3d ed.).[5]

## VII.   CONCLUSION

For the foregoing reasons, defendants Christie and Chiesa's motion for an extension of time to file an answer is granted, the complaint will be permitted to proceed only against defendant Lanigan (as well as the John Does with respect to plaintiff's failure to protect claim), the pending motions to dismiss will be denied as unnecessary and the motion to amend the complaint will be denied without prejudice.  An appropriate order will be entered.


DATED:   June 20, 2014

                                       s/Robert B. Kugler
                                       ROBERT B. KUGLER
                                       United States District Judge

---

[5] Additionally, it is worth noting that within the motion to amend, plaintiff seeks to add to his retaliation claim.  However, he does not specifically name the defendants involved in the purported retaliation, and this Court cannot serve a John Doe.

18